UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

STEFFIN T. McFALL,

        Plaintiff,

v.                                                                          CAUSE NO. 3:21-CV-534 DRL-MGG

RON NEAL,

        Defendant.

## OPINION AND ORDER

Steffin T. McFall, a prisoner without a lawyer, filed a complaint against the warden at Indiana State Prison, alleging he was responsible for an unconstitutional policy regarding the use of Narcan. ECF 1. The court determined that the complaint did not plausibly allege the warden was personally involved in the decision to use Narcan against Mr. McFall, nor had Mr. McFall shown an ongoing constitutional violation so as to support an official capacity claim against the warden for injunctive relief. ECF 7. He was given the opportunity to file an amended complaint, and he has filed a motion for leave to file an amended complaint, along with a motion for a preliminary injunction. ECF 8, 10.

"A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted). Under 28 U.S.C. § 1915A, the court still must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a

claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.

Mr. McFall alleges that on January 7, 2022, he felt lightheaded and his blood pressure dropped dangerously low, making him pass out. ECF 8-1 at 6-7. When he regained consciousness, Lt. Stathem and another officer escorted him to the medical unit. *Id.* at 10. At the medical unit, he alleges he told Nurse Sema, who examined him, that he did not want Narcan to be used on him. *Id.* He explains in his complaint that he takes medication for his blood pressure, diabetes, and pain, and any of these conditions could have caused him to pass out. *Id.* at 9. Sometimes, he says, his medication makes him feel drunk, but he maintains that he did not take drugs. *Id.* Nurse Sema administered Narcan against his will, and Lt. Stathem assisted by "slamming [Mr. McFall's] head back," further exacerbating Mr. McFall's neck pain. *Id.* at 9-10. Mr. McFall alleges that "the reason to [Narcan] is because they don't know who is high and who's not." ECF 8-1 at 10. He contends a prison doctor told him "they don't know who's high on drugs or not so they use [Narcan] as a safe guard in case people are high." ECF 10-1 at 2.

As a result of being administered Narcan, Mr. McFall alleges he is going to be moved to a disciplinary cell house (which is also a drug treatment program) and will lose his job. ECF 10 at 1. He asks the court to issue a preliminary injunction, preventing him from being moved and preventing him from being given Narcan again. ECF 10 at 1.

Inmates possess a Fourteenth Amendment due process liberty interest in "refusing forced medical treatment while incarcerated." *Knight v. Grossman*, 942 F.3d 336, 342 (7th Cir. 2019). To establish such a claim, the prisoner must demonstrate that the defendant

2

"acted with deliberate indifference to his right to refuse medical treatment." *Id.* "Neither negligence nor gross negligence is enough to support a substantive due process claim, which must be so egregious as to 'shock the conscience.'" *Id.* (citation omitted). However, a prisoner's right to refuse medical treatment can be overridden by "a prison regulation that is reasonably related to legitimate penological interests." *Id.* at 343; *see also Russell v. Richards*, 384 F.3d 444, 447-50 (7th Cir. 2004) (concluding inmate's liberty interest in refusing unwanted medical treatment of delousing shampoo was overridden by jail policy designed to address legitimate interest in avoiding outbreaks of lice). "[I]f legitimate penological interests dictate that a particular treatment must be administered even if the prisoner would have refused it, then . . . there is no constitutional right to refuse treatment." *Knight*, 942 F.3d. at 343 (quoting *Pabon v. Wright*, 459 F.3d 241, 252 (2d Cir. 2006)).

Here, Mr. McFall has pleaded himself out of court because the complaint establishes that the nurse had a legitimate penological interest in administering Narcan over Mr. McFall's objections. He admits that he lost consciousness, which is one sign of an opioid overdose. *See* Substance Abuse and Mental Health Services Association (SAMHSA), *Opioid Overdose Prevention TOOLKIT*, 5 (2018) available at https://store.samhsa.gov/sites/default/files/d7/priv/sma18-4742.pdf (last visited Jan. 21, 2022). He admits that his medication can make him seem drunk, which could also mimic signs of opioid intoxication.[1] *See id.* An opioid overdose requires prompt

---

[1] The Opioid Overdose Prevention Tool Kit, prepared by Substance Abuse and Mental Health Services Administration, warns that Narcan may be necessary both if there are signs of overdose

3

administration of Narcan. *See, e.g. Mullen v. Granite City, Ill.*, No. 21-cv-472-JPG, 2021 WL 4775287, 2 (S.D. Ill. Oct. 13, 2021) (alleging failure to promptly administer Narcan led to arrestee's death); *Boland v. Sandoval Cnty.*, No. 1:19-cv-1109-RB-KRS, 2020 WL 1954014, 1 (D. N.M. Apr. 23, 2020) (alleging inmate's death was due to failure to administer Narcan despite signs of a drug overdose); *Wichterman v. City of Philadelphia*, No. 16-5796, 2019 WL 2568340, 5 (E.D. Pa. June 20, 2019) (survival and wrongful death action alleging pretrial detainee's death was due to a failure to administer Narcan). Mr. McFall contends that a prison doctor said they use Narcan if a person shows signs of being high "as a safeguard." ECF 10-1 at 2. Here, given Mr. McFall's signs of a possible opioid overdose, the nurse had a legitimate penological interest in overriding Mr. McFall's refusal. He does not allege the nurse's decision to use Narcan caused her to overlook other possible medical conditions or otherwise harmed him.

Mr. McFall emphasizes the force Lt. Stathem used to hold his head back when the nurse administered the Narcan injured him. But this does not state an excessive force claim against Lt. Stathem. The "core requirement" for an excessive force claim is that the defendant "used force not in a good-faith effort to maintain or restore discipline, but maliciously and sadistically to cause harm." *Hendrickson v. Cooper*, 589 F.3d 887, 890 (7th Cir. 2009) (internal citation omitted). "[T]he question whether the measure taken inflicted

---

or if there are signs of overmedication, which may lead to overdose. Signs of overdose include a pale face, limp body, blueish lips or fingernails, vomiting, inability to be awakened from sleep, or slow breathing and heartbeat. Signs of overmedication include unusual sleepiness or drowsiness, mental confusion, slurred speech, intoxicated behavior, shallow breathing, "pinpoint" pupils, slow heartbeat, low blood pressure, or difficulty being awakened from sleep. SAMSA, *supra*, at 5.

unnecessary and wanton pain and suffering ultimately turns on whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986) (quotation marks and citation omitted). Here, the allegations show that Lt. Stathem used force while administering Narcan to a noncompliant person. The complaint does not plausibly allege the force used was unnecessary.

Finally, Mr. McFall seeks to hold the warden liable, alleging he is responsible for a policy promoting liberal use of Narcan. Because he has not shown an underlying constitutional violation, the claims against the warden must also be dismissed. *Cf. Word v. City of Chicago*, 946 F.3d 391, 395 (7th Cir. 2020) (noting that a policymaker cannot be held liable for a policy without plaintiff first establishing a constitutional violation occurred).

Finally, Mr. McFall's motion for a preliminary injunction must be denied. "[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Here, the complaint does not state a claim upon which relief may be granted, and therefore Mr. McFall has no chance of success on the merits.

Therefore, the court will deny the motion to amend the complaint and the motion for a preliminary injunction. "The usual standard in civil cases is to allow defective pleadings to be corrected, especially in early stages, at least where amendment would not be futile." *Abu-Shawish v. United States*, 898 F.3d 726, 738 (7th Cir. 2018). However, "courts have broad discretion to deny leave to amend where . . . the amendment would be futile." *Hukic v. Aurora Loan Servs.*, 588 F.3d 420, 432 (7th Cir. 2009). For the reasons previously explained, such is the case here.

For these reasons, the motions (ECF 8, 10) are DENIED and this case is DISMISSED under 28 U.S.C. § 1915A.

SO ORDERED.

January 25, 2022                                *s/ Damon R. Leichty*
                                                                   Judge, United States District Court